### WALTER M. STEPPACHER & BRO., Inc. v. KARR.

(District Court, E. D. Pennsylvania.   October 13, 1916.)

No. 1381.

1. TRADE-MARKS AND TRADE-NAMES ⟺95(3)—UNFAIR COMPETITION—INJUNCTION.

Where defendant's label on its shirts was a colorable imitation of complainant's trade-mark, complainant is entitled to an injunction without establishing that any person had been actually deceived.

[Ed. Note.—For other cases, see Trade-Marks and Trade-Names, Cent. Dig. § 108; Dec. Dig. ⟺95(3).]

2. TRADE-MARKS AND TRADE-NAMES ⟺95(3)—UNFAIR COMPETITION—RIGHT TO INJUNCTION.

Complainant used the word "Emery" written in script as a trade-mark for its shirts. Thereafter defendant began the manufacture of shirts, using the word "Emerald" to indicate its brand. At first the word "Emerald" was written in script, but thereafter was written in Roman or block numerals. *Held* that, while defendant's label when in script and copying the slant of complainant's trade-mark was such as was likely to mislead ordinarily cautious buyers into believing that they were purchasing complainant's shirts, complainant is not entitled to have enjoined the use of the word "Emerald," when the form of the letters is entirely different, because the first four letters of the word "Emerald" were the same as the word "Emery."

[Ed. Note.—For other cases, see Trade-Marks and Trade-Names, Cent. Dig. § 108; Dec. Dig. ⟺95(3).]

In Equity. Bill by Walter M. Steppacher & Bro., Incorporated, against I. Joseph Karr, trading as Karr Bros. Decree for complainant granting part of the relief sought.

E. Hayward Fairbanks and J. Bonsall Taylor, both of Philadelphia, Pa., for plaintiff.

Furth, Singer & Bortin, of Philadelphia, Pa., for defendant.

THOMPSON, District Judge. The bill charges infringement of the plaintiff's trade-mark registered January 21, 1913, under Act Feb. 20, 1905, c. 592, 33 Stat. 724, and prays for an injunction and accounting of profits and damages. The facts are as follows:

The plaintiff is a corporation organized in May, 1914, and is engaged in the business of manufacturing and selling shirts. The business was established in 1879 by Walter M. Steppacher, who manufactured and sold shirts under the trade-mark "Emery." Walter M. Steppacher, upon May 12, 1891, obtained registration of the trade-mark "Emery" in the following form:

And in his declaration it is stated that the style of lettering is unimportant, and that the essential feature of the trade-mark is the word "Emery." Walter M. Steppacher was succeeded in business by the firm of Walter M. Steppacher & Bro. That firm, after the passage of the Trade-Mark Act of February 20, 1905, under date of September 19, 1912, made application for and obtained registration of the word "Emery" as a trade-mark for dress and negligee shirts in the form shown in the accompanying drawing as follows:

They set forth in their statement that they were the owners of the previous trade-mark registered by Walter M. Steppacher, and stated that the trade-mark is applied or affixed to the goods by being woven into fabric which is attached to the same, by printed labels on which the trade-mark is shown, and by being printed on boxes and wrappings for the goods.

The plaintiff, Walter M. Steppacher & Bro., Inc., since its incorporation has acquired the business, good will, and business property of Walter M. Steppacher & Bro., including, by duly recorded assignment, the title to the registered trade-mark No. 89,963 for "Emery." The business of the plaintiff's predecessor, Walter M. Steppacher, in the manufacture and sale of shirts under the trade-mark "Emery," amounted in the first year to approximately $30,000. The business has increased until during the year 1914 the plaintiff transacted business approximating $1,000,000. It has spent during the 5 years preceding the filing of the bill $100,000 in advertising "Emery" shirts in magazines and trade journals, and, during the 36 years since the business was commenced, it and its predecessors have expended approximately three-quarters of a million dollars in advertising and introducing the "Emery" shirts. The plaintiff and its predecessors have always employed the trade-mark "Emery" as it appears on the trade-mark registration; that is, formed in script and with a slant, as appears in the drawing accompanying the registration. The label is attached to the yoke of the shirt. The trade-mark "Emery" has been used in the plaintiff's advertisements in the Saturday Evening Post, Collier's, and

other magazines, in lettering in the same form of script, and with the same slant, as in the registration, accompanied by various printed matter and illustrations representing shirts of the plaintiff's manufacture.

The defendant has been conducting the business of manufacturing shirts in Philadelphia since January 1, 1913. Some time during the year 1913 he began attaching to the yoke of the shirt a label containing the word "Emerald" in the following form:

Frank C. Brooker, one of the plaintiff's sales agents, some time prior to October, 1913, saw in a store in Germantown a shirt manufactured and sold by the defendant with the above-described label upon its yoke, and, during the summer of 1914, Walter M. Steppacher saw in a store in Atlantic City a shirt manufactured and sold by the defendant with a similar label.

The defendant was thereupon notified by the plaintiff of its alleged exclusive rights to the word "Emery." The defendant thereupon, before suit was brought, changed the form of lettering of the label "Emerald" from script to block and continued to mark the shirts manufactured and sold by him with the word "Emerald" in the following forms:

The defendant's father, Jacob A. Karr, had been in the business of manufacturing shirts in Philadelphia from 1888 to 1905. The defendant, his father, and another witness testified that shortly after the elder Karr began to manufacture shirts, and until he went out of business, he used the word "Emerald" as one of the brands upon his shirts. The defendant, I. Joseph Karr, was not the successor to his father's business, and, if Jacob Karr did so use the brand, he ceased to use it in 1905, eight years before the defendant began its use. There was no production in evidence of any such brand. The defendant has, since the registration of the plaintiff's mark on January 21, 1913, been engaged in the manufacture and in interstate and intrastate sale of shirts under the label "Emerald," but has not used the script lettering since notice of the plaintiff's alleged rights. He still has on hand, however, labels containing the script lettering and uses the block type of lettering under notice to the plaintiff that he does so without prejudice to his rights to resume the use of the script lettering.

[1, 2] There is no direct evidence of any confusion of goods, except from the testimony of Mr. Steppacher and Mr. Brooker that they were at first deceived by the similarity of the defendant's brand to that of the plaintiff. There is no evidence of any loss of sales by the plaintiff, nor of the extent to which the defendant has used the word "Emerald" in either style of lettering. If the defendant's label is a colorable imitation of the plaintiff's trade-mark, the plaintiff is entitled to an injunction against its use. It is not necessary for the plaintiff to establish by evidence that any person has actually been deceived by the imitation. The question is whether there is a liability to deception through the defendant's use of the word "Emerald." It is not in exact similitude, but the similar form of the script lettering, the

similar slant of the word, and its general appearance, are such that it can be seen at a glance that the defendant's label in script would be likely to mislead ordinarily cautious purchasers in the ordinary course of purchasing the goods and induce them to suppose that they were purchasing the "Emery" shirt manufactured by the plaintiff. So long as the defendant confines his use of the word "Emerald" to Roman or block type in such form as he is at present using, I see no cause to anticipate that any ordinarily cautious purchaser would be likely to be deceived. The only similarity, then, would be in the identity of the first four letters in the word "Emerald" with those in the word "Emery." The word "Emerald," standing alone, would not suggest the word "Emery" in appearance or meaning. It is not necessary to decide whether the plaintiff's predecessor's claim in the statement accompanying the registration of a right to use the word "Emery" in any form is well founded, for the defendant has not used the word "Emery," but an entirely different and distinct word. So long as he does so and does not attempt a colorable imitation of the plaintiff's trade-mark, the plaintiff cannot complain, for it has no monopoly in the use of any other word than "Emery," merely because the first four letters of such word are identical with the first four letters in the word "Emery."

The plaintiff is entitled, therefore, to an injunction restraining the defendant from the use of the word "Emerald" in the script form in which it has been used by him, or in any form resembling the plaintiff's trade-mark, to an accounting and to an order for the destruction of the offending labels.

A decree in favor of the plaintiff may be entered accordingly.